# COMPLAINT

(for non-prisoner filers without lawyers)

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2019 JAN 18  A 11: 27

STEPHEN C. DRIES
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

(Full name of plaintiff(s))

**Janice R Shannon**

**Timothy J Riordan  (spouse)**

v.

(Full name of defendant(s))

**School District of Milwaukee**

**Public Schools (aka: MPS)**

Case Number:

**19-C-0106**

(to be supplied by Clerk of Court)

---

A.    PARTIES

1.    Plaintiff is a citizen of **Wisconsin** and resides at

(State)

**924 E Juneau Ave - Unit 723, Milwaukee, WI 53202**

(Address)

(If more than one plaintiff is filing, use another piece of paper.)

2.    Defendant **School District of Milwaukee Public Schools**

(Name)

is (if a person or private corporation) a citizen of **Wisconsin**

and (if a person) resides at **5225 W. Vliet St. Milwaukee, WI 53208** (State, if known)

(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for **Milwaukee Public Schools (MPS) at (see list attached)**

(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B.    STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1.    Who violated your rights;
2.    What each defendant did;
3.    When they did it;
4.    Where it happened; and
5.    Why they did it, if you know.

1. A.. The plaintiff's employers who are administrators of MPS at Mitchell Elementary

and those in charge of these administrators in MPS violated J. Shannon's rights.

1. B. Timothy Riordan as plaintiff is the spouse of plaintiff and is a plaintiff under the

laws of loss of society and companionship of a spouse due to defendants' actions.

2. What each defendant did includes the following: (As submitted to the EEOC.)

2.A. Evidence given in 24 claims show that MPS actively violates employees'

   safety rights so that employees are being criminally assaulted by students.

2.B. MPS administration has policies, regulations, and rules in place which do not

   work for the safety of their employees. As used, MPS created employee

   harassments including obstruction of justice claims with evidence tampering and

Complaint – 2

cover-ups jeopardizing the lives of employees and students.

2.C. As administered, MPS is a 'corporate party to criminality' and harmed plaintiff.

2.D. As a result of MPS policies and procedures, Janice Shannon worked at MPS

disabled as an elderly female who was successfully working with bi-lateral knee

replacements until MPS harmed this her as claimed.

2.E. MPS has policies and procedures which are intended to maximize their student

size or money as they deceptively violate the safety and protection of students

and employees. MPS obstructs their rights to have local police involved. MPS

2.F. MPS has misused its authority. It used its position as the employee to:

(1) mislead the Milwaukee police and Janice Shannon to not file against assailant,

(2) alter and/& make inaccessible her assailants MPS's record of student violence,

(3) uphold the student who assaulted Janice Shannon without consequences,

(4) not reprimand Mitchell School administrators responsible for Shannon's injuries,

(5) deny worker's compensation as soon as MPS could with an untrue MD position

[Note: 'Infinite Campus' is MPS's on-line record of each student's violent, disruptive,

or bullying activities. Teachers must enter what they witness a student doing as a

record to protect teachers or others and to take action. To alter this is wrongful.]

2.G. At Mitchell Elementary School, at 1728 S. 23rd St., Milwaukee, WI 53204, the

MPS designated and supervising administrators were the Principal and

[Continued as attached, and naming assailant by a pseudonym: 'Oveja Perdida'.]

Complaint – 3

C. JURISDICTION

■ I am suing for a violation of federal law under 28 U.S.C. § 1331.

OR

☐ I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $ _____.

D. RELIEF WANTED

Describe what you want the Court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or to stop doing something.

1. An award of money including payment for constant pain and suffering, loss of

her job, employee benefits, pension, loss of MPS employee medical and dental

coverage and payments, and other personal and financial losses.

2. To stop by injunctive and federal court orders all violations of employee rights, all

violations proven which obstruct employee rights to local city and county police

protection, all obstruction of protective rights of employees, all obstruction of OSHA

rights and Departments of Education and Justice rights of employees.  This is

requested in accord with EEOC requests to maximize the protections of teachers

and public school employees throughout the nation since EEOC stated the case

rises to the level of a federal issue since so many public teachers nationally are

being injured working in public schools. (Attached are Court Reliefs Requested.)

3.  To require by Court Order written rights protecting employees in public schools.

Complaint – 4

E.   JURY DEMAND

I want a jury to hear my case.

■ – YES          ☐ – NO

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this _____18th_____ day of _____January_____ 20_19___.

Respectfully Submitted,

Janice R Shannon & Timothy Riordan
Signature of Plaintiff

POA:Timothy Riordan 414-304-6624

Plaintiff's Telephone Number

HOPFAP2nd101@outlook.com

Plaintiff's Email Address

924 E Juneau Ave.- Unit 723

Milwaukee, WI 53202

(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper.)

## REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FILING FEE

☐   I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a Request to Proceed in District Court without Prepaying the Filing Fee form and have attached it to the complaint.

■   I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

ATTACHED as: *Complaint- 3* CONTINUED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

2. (from page: Complaint – 3 This continues the allegations of what each defendant did)

2.G. Assistant Principal were: Principal Kimberly Malacara with the Assistant Principal Joandy Williams. In MPS Assistant Principals oversee student discipline.

2.H. After the plaintiff, Janice Shannon, was assaulted twice by Oveja Perdita, these assaults were reported to the Principal Kimberly Malacara. These assaults were reported with a written report by Janice Shannon given and explained to the Principal. She referred Janice Shannon to the Assistant Principal Joandy Williams who oversaw disciplinary actions. This was done so the action requested by Janice Shannon, as a substitute teacher, could be undertaken in accord with school criteria and rules. Reports had been made into the "Infinite Campus" reporting system of both of the two assaults of Janice Shannon observed by fellow teacher. "Infinite Campus" was the system used by the teachers to have an inter-teacher MPS reporting system to assure 'bullying' and violence from a student was reported. It was used to assure classroom and staff safety and proper placement, including expulsion, of students who were problem students. An extensive "Infinite Campus" record by teachers over many years existed for Oveja Perdita.

2.I. The Assistant Principal Joandy Williams stated she would speak with the mother and daughter. Janice Shannon pointed out to the assistant principal that this had been done the month before and Oveja Perdita ignored the conference warning. She had run out of Janice Shannon's classroom into another classroom and beat a fellow female student until this student was

bleeding and harmed. The mother sided with her child, Oveja Perdita. Janice Shannon's recommendation of a suspension, which she knew would motivate Oveja Perdita and her mother, was directly denied by Assistant Principal Joandy Williams. This occurred even though Janice Shannon, the plaintiff, had been assigned as the classroom replacement teacher because she had a proven-effective ability at disciplinary classroom control. Janice Shannon was known to have worked as a psychiatric social worker prior to her work at MPS and was mother of nine children and a grandmother. She knew what would work and what would not work in Perdita's case.

2.J. After this decision by the Assistant Principal Joandy Williams, Oveja Perdita followed her pattern of waiting until she would be able to assault Janice Shannon as a teacher and be able to claim that it was not her fault. This was her pattern of misbehaviors. On November 17, 2017, the new co-teacher, Samuel Jinta, was behind the classroom lunch line-up and working to get the children to conform to the line-up procedure. Janice Shannon stood facing the class at the front of the line with the hallway door closed in the classroom. This hallway door was to her back. Oveja Perdita put herself first in line and moved forward pinning Janice Shannon up against the door. The, co-teacher, blocked by the class could not see that Oveja Perdita was making it impossible for Janice Shannon to breathe or speak at a normal volume as she pressed Janice Shannon firmly against the door. When the co-teacher heard Janice Shannon struggling to tell Oveja to stop pinning her, he ran within 5 feet of Janice Shannon; but he was separated by their teacher desk. He told Oveja Perdita to stop it, so she moved back a little bit and reached behind Janice Shannon opening the classroom's hallway door. As Janice Shannon was trying to grab the door to stabilize her loss of balance, she felt Oveja Perdita push her forcefully on her backside so that she flew forward and landed 4 ½ feet past the door. She landed face down with her face being saved by a cloth bag of candy and student papers which she had strapped on

7

herself. Her bag flew up and cushioned her facial landing on the floor. Just short of 65 years old, her entire body was thrown onto the hard and firm wooden floor. Stunned and dizzy, Janice Shannon realized the disruptive students, led by Oveja Perdita, were running out of the classroom. They were about to trample on her so Janice Shannon, stunned and frightened, was able to stand up to protect herself from further harm.

2.K.    Janice Shannon thought she would recover from her pain and body stiffness, but by December 8th, 2017, she was unable turn her neck while driving her car. She needed medical attention. She went to Urgent Care and then was referred to her primary care physician. Her bilateral knee replacement surgery failed even though she had a perfect surgical result for almost three years after her knee replacement surgery. Also, her spine and neck are injured due to the impact of the assault, being spun around and then thrown onto a hard wood hallway floor. She was and still is in constant pain. She must move around to shift where she is feeling her most pain from. Her pain levels are usually between 7 and 10 out of a range of 10 being the maximum pain. Her pain levels have increased over time and are now 8 to 10. She must take medications to prevent the muscle spasms which contort her leg in horrific spasms. Her husband has witnessed this. He works to help her through spasms by massaging her muscles and getting her pills. She must always use a cane. Her doctor also recommended a walker. She prefers a cane.

2.L. This suit is filed pursuant to the attached U.S. Equal Employment Opportunity Commission as attached [pg. 39-40] in the Dismissal and Notice of Rights dated October 22nd, 2018, by Julianne Bowman, District Director which is incorporated. Brief summaries are stated here which tell the claims made to the EEOC. These summaries tell what action each defendant took or failed to take that harmed Janice Shannon. The details are in the EEOC 54-page filing which will be filed as part of the discovery of this case and are incorporated by these references below:

8

2.L.(1.) Janice Shannon was harmed by the defendants, because both MPS and Mitchell School administrators denied Janice Shannon any effective protection as an employee already assaulted twice by the same student after the employee requested protective help.

2.L.(2.) Janice Shannon was harmed by the defendant, because there is MPS-harassment-by-an-administration which permits and uses a system of fraud and lies so nothing comes of the complaint by the employee pursuing due process after the employee is harmed by the administration. Employees have no ability to go forward with their injuries legally after MPS is involved in an employee injury because evidence is not obtained, correctly recorded, or accessible to the employee. In Janice Shannon's case, administrative-harassment included MPS's failed use of a long prior history of assaultive behaviors of the student named, Oveja Perdida. Also, in this case, the Mitchell School's 'Infinite Campus' behavioral records were administratively altered and hidden from access so that MPS and Mitchell School administrators could hide the facts that they did nothing to stop Oveja Perdida for years. Also, in this case, MPS-harassment created a denial of due process to Janice Shannon as an employee when on October 13, 2017, the assailant, Oveja Perdita, virtually walked away with 'less than a slap on the wrist' for permanently crippling Janice Shannon and leaving her for the rest of her life with constant chronic high-level pain. This harassment and denial of due process occurred because Mitchell School administrators altered the records, harmed the gathering of evidence needed for the court, and harmed the District Attorney's prosecution of the delinquency of Janice Shannon's assailant, Oveja Perdita. MPS succeeded in defending itself and the assailant.

2.L.(3.) Janice Shannon was harmed by the defendant, because Mitchell School's administrators did not correct their misleading statements to police and failed to act as they said

9

they would. This misled the police when they investigated this violent criminal action against an employee. This resulted in the D.A. not being able to prosecute a serious felony correctly.

2.L.(4.) Janice Shannon was harmed by the defendant, because Mitchell School's and MPS's administrators failed to have any expulsion proceeding to remove Oveja Perdida from Mitchell Elementary School. MPS also failed to tell Jan Shannon and police officers that this was the case. This left students to know they are in charge and can be violent toward teachers.

2.L.(5.) Janice Shannon was harmed by the defendant, because MPS's and Mitchell School's administrators failed to have an effective video tape security recorder functioning in the school and to use these video tapes for prosecutorial or corrective purposes. The evidence needed to prosecute Oveja Perdita was denied to Janice Shannon, and the assailant mocked her on October 13, 2017. Oveja Perdida was protected from effective prosecution because of MPS's failed security camera.

2.L.(6.) Janice Shannon was harmed by the defendant, because Mitchell School's administrators failed to document within each classroom a student behavioral written record to sort students into groups noting who is reliable or who is not reliable. The assistant principal used this failure to intentionally gather the deceitful students' information to cover her own liability and confuse the record.

2.L.(7.) Janice Shannon was harmed by the defendant, because of MPS administrators failure to have and use *a written required procedural book of consequences and requirements* that are met by MPS when violence occurs. This failure means that students and administrators know they can get away with serious misbehaviors because there is not a system in place that will record, effectively correct misbehaviors, and give consequences that protect employees.

10

2.L.(8.) Janice Shannon was harmed by the defendant, because MPS's administrators failed to have a systematic procedure that a teacher or staff member must use regarding the police department contacts. This prevents effective police investigations from being conducted.

2.L.(9.) Janice Shannon was harmed by the defendant, because Mitchell School's administrators made false statements to police and to employees by stating they would act to expel her. Administrators lied by saying they would expel Oveja Perdida on behalf of a severely assaulted employee, Janice Shannon. *Nothing was ever done by MPS.* They only misled the police and Janice Shannon, their employee, to think something was going to be done. Court orders must have ongoing regulatory involvement or some other system to resolve the matter of severe assaults and lies by MPS. The lies show that the MPS system, a governmental system constitutionally created, often opposes the interests of its employees through deceit.

2.L.(10.) Janice Shannon was harmed by the defendant, because MPS and Mitchell School's administrators **avoided** an effective expulsion procedure and **avoided** the use of criminal juvenile delinquency proceedings to obtain controls over violent-criminally active students. Employee-staff freedom, rights, and rules to take action are lacking and are needed.

2.L.(11.) Janice Shannon was harmed by the defendant, because MPS's and Mitchell School's administrators failed to use an effective procedure for police officers investigating an assault of the elderly, females, &/or disabled or any assaulted employee. MPS's procedures result in the police and district attorney's procedures being altered so that they are not effective for trial purposes and for criminal prosecutions. MPS is part of the cover-up for its own benefit. Police and district attorney procedures which are completely independent of MPS are necessary to correct and address juvenile delinquency and protect teachers and staff.

11

2.L.(12.) Janice Shannon was harmed by the defendant, because MPS's and Mitchell School's administrators failed to gather or give over any evidence on behalf of the injured teacher, Janice Shannon, as her employer. MPS only complied with the defense attorneys required subpoena for Oveja Perdita. This intentional failure again shows MPS is an administrative body protecting itself, not its employees. This fact means that the evidence brought forward in the legal system from MPS was only pro-defense-for-violent students. It was not pro-active for teachers and staff. There is an intentional misleading of staff and teachers regarding this reality by MPS and its administrators. This needs to be ended by Court orders. To have civil rights applied, the rights of the elderly and females &/or disabled and all employees need to be protected by Court orders to end this 'harassment' of employees.

2.L.(13.) Janice Shannon was harmed by the defendant, because MPS's and Mitchell School's administrators *failed to use and failed to apply consequences which will effectively work for a given student with a history-of-violence.* Effective consequences are essential for MPS and their violent students. The harm done to Janice Shannon shows this.

2.L.(14.) Janice Shannon was harmed by the defendant, because MPS's administrators permitted Mitchell School's administrators to fail their duties, violate the law, and intentionally act to cover up and alter a student's violent behavior records by taking the students 'Infinite Campus behavioral records' and placing them in a record accessible only to administrators and MPS supervisors. This administrative action creates a record system so that those employees who are teachers or filling in for teachers, who would have this student in the future, would not be able to know or access the information about a violent student, like Oveja Perdida. This means the violent history of Oveja Perdida was buried so that the information about her violence

12

could be hidden or altered and not used in the legal system. This is an obstruction of justice and a 'criminal' harassment of an employee to protect the MPS administration from legal liability.

2.L.(15.) Janice Shannon was harmed by the defendant, because MPS's administration failed and continues to fail to tell the police of the assaulting student's history of violence and aggressiveness as a bully whenever the police visit Mitchel School and are involved with a student like Oveja Perdita. Justice can occur only when truth is told and exchanged.

2.L.(16.) Janice Shannon was harmed by the defendant, because MPS's administrators negligently and/or intentionally *failed to have immediate consequences*. This MPS failed-response soon becomes a *"no-consequence" to students* who are fully aware when and how they can get away with violence. An *immediate consequence* is a recommended procedure always and nationally and when MPS tells employees what to do. The misuse of warnings by MPS and Mitchell Elementary School administrators means the employees' warnings to students have no meaning to students. This means that the student is in charge. It also means gangs and violent students like Oveja Perdita can take charge of the school and undermine the safety of the student body, employees, and our community. MPS talks a talk that it doesn't walk. Actions do speak and the failure of MPS speaks for itself.

2.L.(17.) Janice Shannon was harmed by the defendant, because MPS's administration does authoritatively use and creates teacher-harassment by those in positions of authority who apply 'scapegoating' techniques. This is a misuse of authority to cover up for administrative failures. Scapegoating is accomplished by MPS's control of the record keeping. As an employer MPS can hire, fire, and now cause the employee to be injured by misuse of their administrative authority. Janice Shannon was 'scapegoated' by this assault which denies her long-term benefits she would have earned. The assault was caused by MPS, not Janice Shannon. This is denying

13

her full due process which should have existed for her, but it does not. If she did not have a lawyer as a husband, she would have not even been able to fight for her rights at all against the corrupt MPS administration. Only Court orders can correct this administrative misuse of authority.

2.L.(18.) Janice Shannon was harmed by the defendant, because MPS's administration intentionally misused entire procedures which protect an employee in order to create the appearance that MPS was doing its duties. Misuse of procedures is rampant in the MPS system and needs to become a class action. Multiple teachers have been harmed. It is actively a system of employee-harassment for obstructing the truth, and hiding the truth, and making the truth an impossible goal. Outside governmental systems and Court orders must control MPS.

2.L.(19.) Janice Shannon was harmed by the defendant, because MPS's administration failed to protect teachers who are 40 years of age or older. This means *the employee's retirement is forced upon employees* by the violent acts of students who are not corrected properly, by the misuse of evidence gathering systems, and by falsifying records about students for the wrongful protection of the administration. This all harms the employees. In this case, Janice Shannon full retirement benefits are partially denied to her unless litigation succeeds here.

2.L.(20.) Janice Shannon was harmed by the defendant, because MPS's administrators and Mitchell School's administrators misused all the safety protections of employees by intentionally doing these acts so *"a true picture of the cause of MPS's failures"* cannot be arrived at by any person looking at it. The records themselves have been altered and are fraudulently put together by the administration. MPS lies will be repeated over and over.

2.L.(21.) Janice Shannon was harmed by the defendant, because MPS's failure to have their system subject to *ongoing-interactive teacher/staff review, communication, and safety*

14

*changes.* Harassment occurs because of "MPS administration's failure to have a system where a teacher could review a violence incident and make undeletable corrective factual entries. What has been done in writing by MPS needs an employee response to give a two sided view. Employees need a Court order to permit review of MPS's administration reports of violence by students since MPS is involved only in protecting itself from an employee response. Only with this *ongoing-interactive teacher/staff review, communication, and proposed safety changes* can an understanding of the facts and realistic safety occur for all people on MPS properties.

2.L.(22.) Janice Shannon was harmed by the defendant, because MPS's administrators and Mitchell School's administrators failed to realize that bad example denies that "what we, as MPS administrators, actually do" is "what we are teaching to our students to do and be".

2.L.(23.) Janice Shannon was harmed by the defendant, because MPS administrative leaders have failed to put into place a 'Procedural Manual' and 'a 3-Tiered Educational System' to assure employee safety and rights are given instead of denied. A denial occurred here due to MPS failures to act and actions which occurred as stated in this complaint and to the EEOC.

2.L.(24.) Janice Shannon was harmed by the defendant, because of the failure by MPS to have in place a system *where the system itself is reviewed and improved in accord with EEOC criteria* to protect the elderly and females &/or disabled and all employees from violence. MPS must be legally and Court ordered to change, or MPS will continue to harm the innocent who are working for them and the student body and the public who need a viable educational system.

2.L.(25.) Timothy Riordan was harmed by the defendants because he has lost the society and companionship of his wife of many years due to the harm caused to her by the defendants. He witnesses Janice Shannon's sufferings each day and has seen the loss of so many loved things that she can no longer do. To relieve her sufferings is to do this case and give her and others *hope*.

15

**3.** *WHEN THE DEFENDANTS DID WHAT THEY DID TO HARM PLAINTIFF:*

3.A. **On November 17, 2016, the assault of Janice Shannon which could have been prevented occurred.** On November 10th, 2016, Janice Shannon told Principal Malacara that Oveja Perdita had assaulted her two times. Janice Shannon was referred to the Assistant Principal Joandy Williams. It was on the date of November 10th, 2016 when this referral occurred due to the seriousness of the 2nd assault witnessed by *Mr. Smith* and *Ms. Thomas* who both made separate entries into the 'Infinite Campus' system. Also, to a written report, not entered into the system was made by Jan Shannon using a hand-written reporting paper and was given to Principal Malacara. In addition to this, an entry was made into the 'Infinite Campus' MPS record by co-teacher *Mr. Samuel Jinta* for the toe smashing.

Mr. Smith not only made entries after he witnessed the second attempted assault by Oveja Perdita; but when the assault occurred, he intervened and personally protected Janice Shannon by stopping Oveja Perdita. In front of Janice Shannon, Mr. Smith refuted the lies of Oveja Perdita when she was falsely claiming that Janice Shannon had pushed Oveja Perdita first. He had witnessed the incident completely and confronted Oveja Perdita by firmly telling her directly he had seen her assault Janice Shannon from behind her and Oveja Perdita was lying. Only because Janice Shannon caught her balance by grabbing onto a school doorknob did she prevent herself from falling face down on the floor with the second assault of Janice Shannon by Oveja Perdita of November 10th, 2017. This event confirms the pernicious deceit of Perdita.

From experience, Janice Shannon knew that she needed to be firm with Oveja Perdita whom she knew for over 7 years. She needed an effective discipline Oveja's mother would not desire. Janice Shannon requested a suspension so that Oveja Perdita could not come to school for a few days. This request was refused by the Assistant Principal Joandy Williams. On

16

November 10th, 2016, this assistant principal stated that her administrative order would only have the mother of Oveja Perdita with her daughter spoken to together. Janice Shannon pointed out immediately that this did not work in the past and that Oveja Perdita had run out of her classroom after the last mother and child meeting with the assistant principal and severly beat up another girl in another classroom. The assistant principal refused to change her order. Because the Assistant Principal Joandy Williams refused to change her order and her decision to continue a failed corrective procedure, Janice Shannon was assaulted by Oveja Perdita and permanently disabled on November 17, 2016. *The assaulted, that could have been prevented, occurred!*

3.B.    **It was on December 2, 2016, a Friday, when Dr. Sanchez showed he was upset over the fact that Janice Shannon was deceived by Principal Malacara who lied to Janice Shannon by saying that 'Central Office would expel Oveja Perdita' from Mitchell School.** Janice Shannon, frightened that Oveja Perdita was still at Mitchell Elementary School, was fearful of being attacked by her again. She approached and spoke with Dr. Sanchez during his inspection visit on December 2nd, 2016 about what Janice Shannon thought Principal Malacara had done for her to protect her from Oveja Perdita.

As she approached Dr. Sanchez, Janice Shannon thought Oveja Perdita was violating Principal Malacara's rulings. She explained what Principal Malacara had said would be done. Dr. Sanchez told he that he knew nothing had been done for the expulsion by Central Office because he receives notices of expulsions.

Janice explained that Principal Malacara also had said she had issued a 3-day suspension that Oveja Perdita was violating and that the Principal stated there was 'nothing she could do to enforce it'. A visibly frustrated Dr. Sanchez explained that was not true at all. He said she

17

should have called in the Milwaukee police and enforced the suspension and explained the violation. They resolve these violations.

**Please Note**: This terrifying and deceitful experience vividly explains *the need for a Court ordered MPS written procedural manual* giving administrators, like Principal Malacara, direct written orders of *what to do* and *what must be done for incidents of violence and obstinate students and/or parents.* Under Principal Malacara nothing had been done except deceit and confusion and endangering Janice Shannon further.

After this brief conversation with Dr. Miguel Sanchez, Janice Shannon realized that Principal Malacara had deceived both Janice Shannon and the Milwaukee Police Department Officers Marchese and Majerie, from District 2, who investigated the assault. No expulsion would occur. This realization occurred when Janice Shannon was still able to work at MPS at Mitchell Elementary School, even though she was already physically deteriorating from the assault and failures of MPS administration and administrators. It was on a Friday, the week after Thanksgiving weekend and two weeks after the assault, when Janice Shannon spoke to Miguel Sanchez, PhD.

Dr. Sanchez knew about Mrs. Shannon's work because he had hired Janice Shannon to work at Mitchell. Now, years later, he was the MPS administrative overseer from Central Office of 5225 W. Vliet for Mitchell Elementary School. Janice Shannon is sure this was on December 2, 2016, a Friday, when Dr. Sanchez expressed verbally and through his body language that he was upset over the fact that Janice Shannon was deceived by Principal Malacara. Dr. Sanchez explained to Janice Shannon that he would have been notified as the MPS superintendent if an expulsion was requested; and he left Janice Shannon saying he would talk to Principal Malacara immediately. *Whatever he did is not known, but Oveja Perdita stayed on campus!*

18

From that conversation on, Janice Shannon did all she could to protect yourself and avoid Oveja Perdita through the help of others who were staff members and kept Oveja Perdita away from her. Then, because of her good driving record, after being stopped by the police in her car because she was unable to turn her head to see the police car as she changed lanes, she realized she was severely injured and not getting better. She was deteriorating more and more physically from the throw on the ground by Oveja Perdita. It was on December 8, 2016, when Janice Shannon knew she needed medical attention as she felt lightheaded, dizzy, was experiencing great pain, and having difficulty carrying herself and moving her body.

On December 8th, Janice Shannon was concerned that the lie of Principal Malacara could lead to an Infinite Campus issue and went on line at MPS to see the Infinite Campus entries. She asked for other teachers to help her when she could not find Oveja Perdita's Infinite Campus entries. The records were missing so she asked Principal Malacara to retrieve them. The Principal could not retrieve Oveja Perdita's Infinite Campus records which showed Perdita's history of violence at Mitchell Elementary School toward Janice Shannon and others.

From observing Principal Malacara attempt to retrieve the Infinite Campus records of Oveja Perdita, Janice Shannon knew Assistant Principal Joandy Williams had tampered with the Infinite Campus records for Oveja Perdita to protect herself as the administrator who failed to listen to or protect Janice Shannon.

Janice Shannon explained she could not turn her head and a squad had pulled her over because of this. She needed medical care and thought she could return after Christmas vacation and recovering. Janice Shannon then asked Principal Malacara if she could go for medical treatment due to her severe dizziness and medical failures which were occurring. She left Mitchell Elementary School that morning and went to the Columbia – St. Mary's Urgent Care

19

for x-rays and medical attention. The physician immediately recommended that she see her primary care physician. Her medical condition took precedence from that point on and her medical condition from the assault continued to deteriorate. Janice Shannon would soon experience that the elderly and those with bilateral knee replacements very often do not recover and become permanently disabled from serious assaults like the one she was given by Oveja Perdita. [*Janice Shannon's hopes for recovery never occurred due to the injuries sustained.*]

MPS friends, who were staff, told Janice Shannon that Oveja Perdita would graduate from Mitchell Elementary School, and that no attempt to expel Oveja Perdita had ever occurred. Principal Malacara had lied to divert the police and Janice R Shannon, but the principal did protect MPS and the money MPS gets. The plaintiffs eventually learned that this diversion of the police resulted in the police issuing only a $25 ticket for disorderly conduct to Oveja Perdita. Also, the principal's lie meant that no police report was prepared which would have been needed for prosecution of the juvenile delinquency case. The plaintiffs did research and discovered that no juvenile delinquency case was undertaken by MPS. The plaintiffs undertook working to get the delinquency proceeding underway as complainants who sought police and D.A. involvement.

3.C.    **It was on the date of *October 13, 2017, in the victory for Oveja Perdita in the* Vel R. Phillips Youth and Family Justice Center, *that plaintiffs fully understood that* MPS was interested in escaping their own liability and had harmed Janice Shannon's EEOC rights.**

Before this date, Janice Shannon and her husband decided they would confirm that there was a delinquency proceeding against Oveja Perdita for permanently injuring and crippling Janice Shannon. By calling the victim witness unit of the juvenile delinquency center, Timothy Riordan found out that there was no proceeding at all. Timothy Riordan went to the police department for the Mitchell Elementary School, MPD-District 2 on Lincoln Street, to discover

20

only that he would have to check records at the MPD police records department on 2333 North 49th Street (2nd floor), MKE, WI (53210). There the plaintiffs found out that only a $25 ticket had been issued. The plaintiffs then began the procedure and work to have a juvenile delinquency prosecution of Oveja Perdita for what she did and knew Perdita needed corrective help.

Timothy Riordan did all he could as a prior attorney who had work experience in the juvenile delinquency center to assure that Oveja Perdita was prosecuted and supervised. Unfortunately, he came to realize that the pleadings were defective because the initial police report for a prosecution had never been undertaken because of the deception of Principal Malacara of the Milwaukee police who investigated the assault of Janice R Shannon.

The juvenile delinquency rules prevent contact with Timothy Riordan or his wife Janice Shannon except through the victim witness unit. The District Attorney refused to talk to the plaintiffs regarding the facts because of the rules. The D.A.'s error in the pleadings was never corrected. This was shown by what occurred on the trial date. The criminal pleading error was a serious legal error caused by MPS's deceitful and misleading actions to the police. This error arose because the officer's report was not to form so the D.A. misunderstood it. The assault of Janice Shannon occurred on November 17, 2016, but the pleadings failed to correctly state that. The work the plaintiffs did to correct the deceit of MPS did not work out, and the D.A. pled out the case while Janice Shannon objected to the plea as not what she agreed to. Because of his legal experiences as a lawyer, Timothy Riordan explained to his wife what had occurred.

It wasn't just the lie to the police and Janice Shannon that ended an effective prosecution of Oveja Perdita. The coverup for Oveja Perdita by MPS involved a ***deliberate and intentional failure of MPS to gather and set up evidence useful to Janice Shannon's case.*** MPS administrators and Mitchell School administrators' coverups included having a non-operational

21

school video, failure to properly use and gather reliable witnesses because MPS needed to cover up its own wrongs, and the 'criminal' burying of access to the violent history of Oveja Perdita by deleting and making the 'Infinite Campus' computer reporting system on Oveja Perdita related to Janice Shannon *inaccessible* to teachers and possibly everyone in the MPS system.

Harming Janice Shannon and her EEOC rights was part of an ongoing misuse of MPS's administrative authority which has made MPS a party to the criminality MPS covers up. Also, MPS is a party to Oveja Perdita violent tendencies, and to her leadership as a bully, and to her beating up of another staff member besides Janice Shannon. The violent history of Oveja Perdita was deleted and removed as part of a criminal and EEOC coverup by Assistant Principal Joandy Williams. She totally ignored and overrode Janice Shannon's rightful request for protection from Oveja Perdita. The burying and deletion of her violent history in Oveja Perdita's infinite campus record was also fatal to Jan Shannon's prosecution. MPS did nothing but obstruct justice for Janice Shannon and prevented a successful prosecution. This EEOC case must go forward.

[**Note:** The evidence of MPS's administrative deceit that misled the Milwaukee Police Officers Marchese and Majerie was documented in the Notice of Circumstances for WI. Stats. §893.06 Claims served on Defendants on Feb 22nd, 2017. Court ordered procedures are needed.]

MPS administrative actions were fraudulent lies. Principal Malacara misled both Janice Shannon and the MPD Officers Marchese and Majerie who first responded when she was assaulted by Oveja Perdita on November 17, 2016. However, it was not until the failed prosecution attempt of Oveja Perdita in the juvenile delinquency court, Vel R. Phillips Youth and Family Justice Center, that Janice Shannon and her husband, on the date of *October 13, 2017,* realized that Oveja Perdida was protected from effective prosecution solely because of MPS's deceptions: MPS's obstruction to police work, MPS's deceit to Janice Shannon about the

22

actions MPS would take regarding Oveja Perdida, and MPS's destruction of evidence by MPS's failure to have a functioning video-camera system at Mitchell Elementary, and MPS's intentional destruction and/or hiding of the "Infinite Campus" record plus other noted MPS actions.

On the October 13th, 2017 appearance for the trial that would not proceed, this failed prosecution attempt was tragically defined by Oveja Perdita and her defense attorney. *Their glee* at the judicial outcome was more than noticeable, because *Oveja Perdita was visibly mocking and laughing at Janice Shannon* as her victimized-teacher walked out of the courtroom in pain with a cane in hand. *The MPS procedure* which is being litigated against here included: (1. ) to see the violence of Oveja Perdita walk free without a meaningful sentence through a plea agreement which was not agreed to by Janice Shannon, (2.) to be denied the delinquency trial the plaintiffs' sought, (3.) to be permanently disabled as Janice Shannon is for the rest of her life, (4.) to be suffering constant severe pain, (5.) to face the horrific awakening of the intentional wrongful failure of MPS to gather evidence properly, (6.) to have MPS's video equipment shut off instead of operational when you are assaulted by Oveja Perdida after pleading for MPS help, (7.) to have MPS intentionally fail to put together a case of credible students who saw the incident, (8.) to have MPS fail to assure that the statement of co-teacher Jinta could be used by the court, and (9.) to know the evidence of the years of writing notes by teachers of Oveja Perdita's violence, instigations in classrooms, and beatings of others was now buried by the Assistant Principal who Janice Shannon asked to protect her as an employee. This explains why this EEOC charge is before the Federal Court. [EEOC-10/22/2018 pg:39-40 is Incorporated]

It was on the date of *October 13, 2017, in the victory for Oveja Perdita in the* Vel R. Phillips Youth and Family Justice Center, *that plaintiffs fully understood that* MPS was solely interested in escaping their own liability for failing to undertake protecting an almost 65-year-old

23

elderly woman with double knee replacement surgery (which have now totally failed after the assault). MPS had completely failed to protect an employee who had already been assaulted twice before by Oveja Perdita. MPS was not at the victory for Oveja Perdita, **but the dire consequences and harm caused to Janice Shannon by MPS and mockery given to her by Oveja Perdita *was all MPS's doing.***

The question of **'WHEN'** did the defendants do what they did to harm plaintiffs is correctly answered by saying, "Whenever MPS could and thought they could get away with it, the defendants did harm the plaintiffs!" This pattern of behaviors will continue unless the Court is involved and issues orders to bring MPS's deceit and violations of EEOC rights to an end!

**4.** **WHERE** *THE DEFENDANTS DID WHAT THEY DID TO HARM THE PLAINTIFFS*:

4.A.    The operation of the MPS system is out of their Central Office building at 5225 West Vliet Street. The decisions that determine what is done in the MPS schools, like Mitchell Elementary School occurs there. MPS's failure to have a working written ***procedural handbook*** and the failure to have ***a three-tiered disciplined educational system*** arises out of the decisions from the MPS Central Office building for administrators.

4. B.    The physical injuries that occurred to Janice Shannon on November 17, 2016 occurred at the Mitchell Elementary School at 1728 S. 23rd St., Milwaukee, WI 53204 in the classroom room numbered 208 and then onto the hallway on the second floor. At Mitchell School, both in the classroom where she was pushed and, in the hallway, where she landed face down, Janice Shannon was permanently disabled and lost her 100% successful bilateral knee surgery, lost her spinal stability and structural support, and lost her neck support and movement, and lost her freedom from chronic-severe pain she now endures. Now, Janice Shannon is in constant neck,

24

spinal, hip, lower back, and leg pain. Her forehead at times has popping veins from the level of pain she endures. All of this was given to Janice Shannon, by MPS's failure to act as it says it does at Mitchell Elementary School. There MPS refused to protect its elderly-female with bilateral replaced knee replacements who MPS used for behavioral control issues. At Mitchell, deceitful MPS administrators enabled an 8th grader who was known and written up for years at Mitchell as a violent, disruptive, abusive student known for instigating problems in classes and being a bully. At Mitchell Elementary School, MPS operates a failed disciplinary system and with a failed educational system with a failed procedural program because it deceives itself, the public, and its employees. That is *'where'* Janice Shannon was harmed working to help others.

4. C. The final harm to Janice Shannon occurred *on October 13, 2017 in the Vel R. Phillips Youth and Family Justice Center in the courtroom of Judge David A. Feiss* at the Milwaukee County Circuit Court, Branch 46 in the Vel Phillips Juvenile Justice Center 10201 W. Watertown Plank Road Wauwatosa, WI 53226-3532. This occurred when Oveja Perdita received a plea bargain, over Jan Shannon's objection which was overruled by the motion of the District Attorney and ruling of Judge David Feiss. There the eighth grader who assaulted Janice Shannon received 6 months of probation with a withheld sentence that would be erased if Oveja Perdita *merely attended school daily on school days for six months – a task that every student who has any intention of going to school succeeds at.* There, the Circuit Court entered a sentence that Oveja Perdita's mother wanted so that she can go to work and have someone watch over Oveja Perdita. Meanwhile, Janice Shannon is in a very high level of pain, permanently crippled, and walking with a cane and hoping she does not fall. She prays the Federal Court changes with orders the wrongful choices made by an MPS system operating dangerous and criminal places where many innocent children, families, and adults are injured -**places named as "Schools".**

25

**5.** *WHY THE DEFENDANTS DID WHAT THEY DID TO HARM THE PLAINTIFFS:*

5.A.    Both parents began to work for MPS following their son going to heaven. John died and his father is writing about his saintliness. John was a special needs child who had the intellectual level of a six-year-old at 22 years of age. Both parents, in John's memory, wanted to work in some capacity for those who are less fortunate. MPS was a choice both chose; but Timothy Riordan lacked the skills needed to effectively discipline MPS students with special needs due in part to the MPS systematic failure to employ a system that works for those who lack the multi-task skill levels Janice Shannon has. From their work experience with MPS, both plaintiffs understand that MPS is paid per student for those who attend MPS. As plaintiffs examine the **'why'** this harm occurred to Janice Shannon, they conclude it is because of the effort of MPS to continue its size and finances by keeping the largest number of students in the MPS system. Money is the primary motivation for MPS. Their livelihood and size are based on payments on a 'per student basis'.

5. B.    Unfortunately, both plaintiffs have also observed from their work in MPS that in order to keep large number of students, MPS has decided it must be lax in its suspensions and rules that would improve its educational system. Both plaintiffs believe the laxity in discipline has resulted in the low scores for students that MPS obtains. This resulted in the loss of substantial government funding. Also, MPS system is in competition with private schooling funded through the Wisconsin parental choice program which is also known as the statewide private vouchers school program. Because MPS is lax and virtually dysfunctional as a disciplinary system, private schools get the better students who are willing to be compliant with the rules of the private schools. Also, private schools are generally not equipped to take care of special needs students

26

yet. This means that the public-school systems have greater challenges in their student population related to effective behavioral controls which are essential to good education.

5. C.    The **'why'** question of the defendants action also is part of the larger question of **'why'** disciplined units outperform undisciplined units in every aspect of life. There is a philosophy in MPS; i.e. a belief system that the old systems of discipline do not work. This is a philosophy prevalent among the leadership of the MPS system. It was expressed in former President Obama administration as a goal to have great leniency in behavioral problems. Somehow the fiction of thinking leniency would result in better performance was promulgated by a president who stated he worked long hours to get where he got in life. Unfortunately, this is a highly flawed belief. It ignores the reality that doing nothing constructive leads to violence and disruptions in the school system which make education impossible. Order and discipline are essential needs.

Both parents jointly raised and homeschooled their developmentally delayed son, John. He was like a six-year-old even when he was 22 years of age. His presence, kindness, love, work ethic, and willingness to do whatever his parents asked him to do was an experience his parents miss more than anything. John's love and discipline showed his parents that the MPS philosophy of rejecting discipline is a failure. The southern states of the USA do not have the same problems as the northern states because their discipline system is stricter, and it works.

Both plaintiffs were raised by parents who had just returned from World War II with honors. The generation of post-World War II children were raised in an environment of discipline. Whether they liked it or not, it worked. No one from our generation could have imagined the deterioration in our culture. It occurs due to lack of discipline and misleading educators that permit disruptive, vulgar, violent, criminal, and bullying behaviors.

27

5. D.   The belief that *'you can talk the talk and not walk the walk'* defines the MPS system. Their own deceit fails to follow *values essential* for an educated future. It is impossible to have a functional and effective MPS system with the values lived out at MPS. A peaceful, viable, loving, and disciplined atmosphere leads to an educated public. Those who used the public-school system 30 years ago are a different group of people than those who are using it today.

The Court can use lawful orders to effect changes in the culture and a return to the belief, example, and discipline that creates a peaceful atmosphere. Currently, MPS is part of the failing culture. MPS fails to lead peaceful people to where they need to go. MPS administrators mislead students whenever they permit violent students to prevail. The events that occurred in this case upheld deceit, dishonor, and permissive wrongfulness. It is based upon a lack of *wisdom*. We need Court orders for a *3-tier system* with *a written procedural handbook* that returns authority to teachers and the police while it ends the MPS deceit. MPS must pay for its wrongs.

5. E.   The position and understanding of the plaintiffs of the failure of MPS is not theoretical, rather it is from pragmatic work-related experiences. The plaintiffs owned and operated a CBRF licensed group home and shared apartments for those with mental health problems, alcoholic problems, and developmental delay problems. Many of those they helped had long-term histories of not being able to be helped by governmental agencies. Many of them had histories of severe alcoholism and homelessness in the community which included living in cars and on the streets.

The key to the success of what the plaintiffs did in the community was they would not allow violent people to control their homes or to stay in the home if they decided they would prefer violence over being cared for, fed, and provided all basic needs including medical care.

28

Violence and bullying do end all stability in any communal setting. School settings are communal. Janice Shannon obtained long-term stabilizations for the community when she helped those who had long histories of homelessness and lack of stability.

MPS, by its permissiveness did silently uphold violence in schools, and it ended the educational system as we knew it. The United States has failed so far to politically and legally understand the first criteria of an effective education system is an atmosphere of peace and respectful discipline. It includes working with each other to solve problems peacefully. It must apply a firm disallowance of violence, illegal drugs, vulgarity and other criminality.

Pragmatically with kindness and essential discipline, plaintiffs worked with those who had severe problems with long-term histories of destabilization in their group homes and apartments. Plaintiffs did not tolerate criminality like that tolerated by MPS. The plaintiffs' success as group home operators of the disabled was not because they did not have to deal with criminality and violence as MPS also must deal with it. Rather, the plaintiffs success was because they ended 'criminal behaviors' that attempted to take control of their housing. This was attempted by the violent, criminal, and disruptive people who will often end up living on the streets because they can't live anywhere cooperatively and peacefully. The 4th Tier is for this group.

The claims of what each defendant did from MPS to harm Janice Shannon are best defined by *why they did* it and *why they failed to do it correctly*. Janice Shannon was never injured in her group homes because she was in charge along with her husband who protected and listened to her. Even at MPS, Janice Shannon understood the use of effective discipline which leads to a classroom atmosphere where education can occur. To have used Janice Shannon for

29

this disciplinary – constructive role is an admission by MPS administrators of her abilities and what MPS now needs to do.

The failure of Mitchell administrators to listen to Janice Shannon's requests for protection and disciplinary action showed arrogance and the failure of the MPS philosophy lived out by the Assistant Principal Joandy Williams. She only admitted her wrongfulness by 'criminally' and surreptitiously altering and making it impossible for others to access the Infinite Campus record of Oveja Perdita! Discovery can show this.

The last information received about Assistant Principle Joandy Williams was that she has been promoted by the MPS administration. She is denying an effective education with a proper disciplinary background to students. She is denying the safety teachers like Janice Shannon need. Assistant Principal Joandy Williams left Janice Shannon permanently injured for the rest of her life in chronic pain because of Joandy Williams' beliefs and activities which are the wrongful part of the MPS system. ***This MPS hypocrisy*** *which violates basic employment rights and upholds criminality needs* ***federal court orders, so it is stopped and ended***.

5.F.    The answer to ***why*** MPS did harm the plaintiffs includes: (1.) The failure of MPS administration to have in place: a written and effective ***procedural handbook*** such as that requested by the plaintiffs. (2.) The failure of MPS to have in place: ***a three-tier system*** where ***the fourth tier is the criminal justice system***. This request by plaintiffs is based upon MPS's failure to admit why so many people flee Milwaukee to raise their families elsewhere. People flee to move to the suburbs and outlying areas to protect their children.

30

The desire to not be a resident of Milwaukee by teachers, police officers, and other city of Milwaukee workers is not accidental. Milwaukee residents face the issue of how to educate their children and pay the additional cost of private schooling.

"The truth hurts" answers the question of "why" it difficult for MPS to look at itself and admit to "why" the defendants have harmed Janice Shannon". MPS administration knew how to use Janice Shannon's abilities to their own benefit until she faced Oveja Perdita and Assistant Principal Joandy Williams. Both were backed by Principal Malacara.

*MPS is willing to jeopardize the health, well-being and wise request for protection of an elderly, very talented, employee for the sake of satisfying their need to please a criminally violent assaultive student. The answer to 'why?' is grounded in the reality that the MPS administration* **"Talks the talk, but does not walk the walk!"**

**Court orders and justice must prevail over MPS's hypocrisy and administrative gambling with the lives of elderly employees who are needed to teach others.**

31

**COMPLAINT** of JANICE SHANNON (et.al.) v. MILWAUKEE PUBLIC SCHOOLS

ATTACHED as: *Complaint- 4 D. RELIEF WANTED* CONTINUED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**Complaint- 4 D**: This continues the Court Relief Requested of # 2 from page 4-D. This is a two-step solution which incorporates the EEOC regulatory requests with federal injunctive and court orders to resolve employee injuries and rights and to protect the public and students.

**Step 1**: Order a written & published procedural manual prepared by the parties entitled:

*Federal Court Ordered: Procedural Manual for Milwaukee Public Schools (MPS)*.

**Step 2:** Order a *Three-Tier MPS Educational System* as described below which resolves the disciplinary-educational problems which currently endanger employees, staff, students, and all people who enter onto MPS properties. Only successful specialty schools with high national scoring can be exempted from this system.

These Court ordered reliefs requested cannot be altered or controlled by MPS. It requests public school solutions which prevent violent and disruptive students from controlling and harming our schools, teachers, and students. *These two steps orders include the following:*

**2.A.** **Step 1**: *Issue Court orders requiring* MPS to have a written *Federal Court Ordered: Procedural Manual for Milwaukee Public Schools (MPS).* This manual needs to be contractually guaranteed by Court orders so it is used and known by all levels of MPS, its union,

32

and its employees and those evaluating what services and consequences they can expect from MPS. This **procedural manual to be effective needs to include the following**:

(1.) *Purpose of Manual*: This MPS Procedural Manual states effective and protective-employee-harassment-regulations which cannot be circumvented by MPS for protecting all teachers and staff of all ages, disabilities, and employment positions. It includes opt-out procedures for employees given mistaken or endangering orders by MPS administrators, rights to call in governmental police for endangering situations, rights to set out the reasons the teachers can object to MPS administrative orders with protections for their job security including the right to change schools, and all other rights necessary to prevent what has happened to Janice R. Shannon and those in similar situations at MPS.

(2.) *Relief by Court:* Rules implementing employee's rights with governmental police and the limitation of MPS's authority stated publicly by the Court.

(3.) *Relief by Court*: Rules requiring administrators to act as stated here with very specific incremental steps and corrective outcomes for students who are disruptive in classrooms including: students non-compliant to an educator's requests, students consistently deceptive and deceitful, students repetitively expressing vulgarities verbally or physically, students who are violent and/or bullying to others, students having family members who support this behavior or express it themselves and threaten employees of MPS, and all other student or family (or guardians) of students who are verbally or actually threatening or who express violent behaviors which need to be evaluated at an employee's or a MPS administrator's request or at the request of a fellow parent of another student or at the request of a student who is credible to the teacher or MPS administrators.

33

(4.)   *Relief by Court*: Procedures for assuring that teachers, employees, and others lawfully on MPS property *may file notices to MPS of improvements or repairs that are necessary to continue the video security, computer security, personal security, and property security* at MPS facilities and properties or gatherings in public places.

[Note: Procedures need alternative methods of assuring notices are filed such as: a recording the notice on carbon paper, specific forms that can be copied, or other secured and verifiable systems of communicating (This recording system needs to include disabled-assistive means for those with special needs.)]

(5.)   *Relief by Court*: Written effective and protective-employee-harassment-regulations which are reviewed by the parties. These are Court approved and ordered, given to employees, and published *to control* MPS administration and those who endanger or threaten staff.

(6.)   *Relief by Court*: Procedures for preventing MPS administrators from obstructing or misleading police called to investigate assaults and serious disruptive instigative student behaviors. These procedures include ending all MPS administrative misinformation to police, MPS interference in police work, and MPS obstructions to governmental police work with independent investigations of any and all crimes on MPS property. These procedures include educating all MPS administrators and employees so that due process and constitutional rights are not being denied to any employees of MPS. These procedures include that there is *no right, not even negligence, which can allow any system, like MPS, to circumvent a victim from lawful protection by the police when the victim has a right to protection from an assailant.*

34

(7.) **Relief by Court**: Procedures for all governmental police *to do their investigation independently of MPS's position* on the issue presented and *to assist the victims to determine if police are to begin criminal-delinquency proceedings against an assailant who is on MPS property.* Procedures permitting the police to issue orders to expel a student or place the student in secure detention educational facilities. *Procedures to give police access to MPS security camera information with authority to issue police citations if the MPS equipment is not working.*

(8.) **Relief by Court**: Procedures requiring MPS to have *written incremental-increases-in-consequences for violence, bullying, and in school disruptions* for each student with written and computer programmed proof of the *use of incremental-increases-in-consequences* to the violent assailants and bullies as part of MPS procedures. This system's entries are to be *immediately shared upon entry with governmental police* for victims of assailants and bullying. Entries once made into the MPS system cannot be altered or deleted by MPS administrators and need to be time dated and signed with identity systems such as MPS employee ID numbers.

(9.) **Relief by Court**: **Procedures *addressing each complaint claim noted above of what each defendant did or failed to do which harmed the plaintiff,* Janice R Shannon.** Each procedure must be a system ending these harmful actions and failures to act. Plaintiffs will share their filing with the EEOC with their procedures recommended for the Court relief they propose as part of *Federal Court Ordered: Procedural Manual for Milwaukee Public Schools (MPS).*

-------------------------------------------------------------------------------------------------

**2.B.** **Step 2: *Issue Court Orders mandating* a *Three-Tier MPS Educational System*** requiring MPS to create and fully implement a disciplinary and educational system that protects teachers, students, and the public. Below is the outline for the Three-Tier MPS Educational System

35

proposed and requested by the victim, Janice R. Shannon. It will assure effective and protective

employee harassment regulations while it assures protection for all students and the public.

## REGULATORY PROPOSAL OF A THREE-TIER EDUCATIONAL SYSTEM at MPS:

From Janice Shannon's and other teachers' experiences, the following proposal is made

to bring about the controlled, secured, nonviolent atmosphere in the MPS system:

***Relief by Court***: Issue Court orders requiring an educational system establishing a

protective and disciplined educational system which is a three-tier (tier 1-3) secure

system throughout the MPS system with the fourth-tier (tier 4) in the criminal justice

system with all the protective systems of the juvenile delinquency system.

**The protective and disciplined goal of a MPS Three-Tier system** will be to

have as many children as possible in Tier-1 and to have a system to earn their way back

into tier 1 if a student has any setback in behavioral problems. Problems can be resolved

with corrective requirements, a proper discipline for wrongdoing, supportive assistance,

restorative justice instructions, and counseling programs, including the use of spiritual

and ethical guidance as requested by the parent &/or student &/or trusted personnel.

**The 1st-tier grouping**: Tier-1 would require behavior that would be acceptable

in a court with 'courtroom' demeanor and behavior always. This tier could have the

lowest security with teachers completely in charge and be for those students who respect

teachers, are willing to follow rules, and have parents or guardians who contractually sign

on to this as part of the schooling. This tier applies to those who are compliant, as if they

are in a 'courtroom' with respect to all, and who would understand there are

consequences to their actions. This tier of individuals does dress modestly and

appropriately (wearing uniforms helps). They do use appropriate language that is not

36

vulgar. They do act in accord with nonviolent rules that include behaviors conducive to educating a group. This group is the group of those who understand that obedience is 'success' for all who desire a future. This 'success' should not be taken away from them by the violent, the unruly, and those parents or guardians who believe in rule-noncompliance and actively are violent. In order to be in tier 1, all rules, the same as 'courtroom' demeanor and behavior, must be adhered to by students and parents.

**The 2nd-tier grouping**: Tier-2 would be those who violated rules and were not compliant as determined by teachers in charge. These tier 2 students are placed in a more secure schooling setting with security guards involved in controlling and monitoring their behaviors along with the teachers. They are observed with video-camera and will be immediately placed into tier 3 for undermining the security system of tier 2. This group is highly controlled and they have fewer choices. In the school, the parents and guardians must also be regulated by understood and clearly stated (*do & do not*) civil rights rules so that no threats or support of their child's wrongful or disruptive behaviors are supported or encouraged. Both the students and parents (guardians) of the students who fall into the tier 2 system will be required to undergo a program so that they understand how the child can move back into tier 1 or will be moved into tier 3 if they are noncompliant. They will be instructed how their future will be in a higher or lower tier system depending upon their ability to be not-disruptive, to not-instigate wrongful behaviors, to be rule-compliant, and to be nonviolent. This group will be informed of the laws and court-like criteria that they must comply with. Success is related to rule compliance, nonviolent behaviors, and societal expectations. This will be a part of their education and preparation for life in every society.

37

**The 3rd-tier grouping**: Tier-3 will be for those students and parents or guardians who have lived so that noncompliance, illegal activities, criminality, drug and gang related activities, and violence are part of their life at this point in time. They will be able to revise and restore their futures by compliance with the system offered to them. If they decide noncompliance is their life choice at any point in time and they continue these behaviors, then there will be criminal charges that are appropriate to the students, parents or guardians who support this behavior. Fines may be used to obtain compliance and to pay for the damage to school property, other students, and staff for teachers who have been harmed. All destructive behaviors will be under security rules and appropriately and lawfully dealt with. Education classes to all parties in tier 3 will be offered to adults and students and required so their children can stay in tier 3 or be able to move back into tier 2 or 1 as may be appropriate!

**The 4th-tier grouping**: Tier-4 is out of the traditional MPS administrative school system (except possibly with regard to funding). It will involve the criminal justice system with all its consequences and temporary or permanent labeling of juvenile delinquents to protect the community in the future. There needs to always be hope for those who really can and do change!

Respectfully Submitted this 18th day of January 2019,

Janice R. Shannon                    & Timothy J. Riordan

38

Case 2:19-cv-00106-WED   Filed 01/18/19   Page 38 of 38   Document 1